UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GAIL ANN SCHULTZ,

        Plaintiff,

v.

        Case Number 07-13932-BC
        Honorable Thomas L. Ludington

BURTON-MOORE FORD, INC., d/b/a Moore
Motor Sales, Inc. and AMERICREDIT
FINANCIAL SERVICES, INC.,
        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO AMEND THE SCHEDULING ORDER

Plaintiff Gail Ann Schultz's ("Plaintiff") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is presently before the Court. The amended complaint alleges that Defendant Burton-Moore Ford, Inc. ("Defendant") violated various consumer protection statutes arising from the sale of a 2007 Ford Taurus on January 25, 2007. Dkt. # 21. The instant motion seeks summary judgment with respect to the counts alleging violation of the following statutes:

(1)     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a);
(2)     The Motor Vehicle Sales Finance Act ("MVSFA"), Mich. Comp. Laws § 492.113;
(3)     The Credit Reform Act ("CRA"), Mich. Comp. Laws § 445.1851;
(4)     The Motor Vehicle Installment Sales Contract Act ("MVISC"), Mich. Comp. Laws § 566.301;
(5)     The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2308(c);
(6)     The Michigan Motor Vehicle Code, Mich. Comp. Laws § 257.233a; and
(7)     The Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679.

Plaintiff further asserts that the statutory violations entitle her to summary judgment with respect to her claims for deception and fraud, breach of contract, breach of good faith, and negligence. Plaintiff's motion asserts three general groups of violations. First, Defendant did not make all

statutorily required disclosures relating to the financing of the vehicle. Second, Defendant misrepresented the finance charge for the loan and other related loan terms. Third, Defendant did not accurately disclose the used vehicle's mileage or the warranty provisions for the vehicle. Defendant disputes each of these assertions.

Additionally, Defendant filed a motion to adjourn the scheduling order. On May 28, 2008, the Court held a hearing to address the pending motions. For the reasons stated below, the Court will **GRANT** in part and **DENY** in part Plaintiff's motion for summary judgment. The Court will **GRANT** Defendant's motion to adjourn the scheduling order.

I

According to Plaintiff's affidavit, she wished to trade-in her rear-wheel drive 2004 Mercury Grand Marquis and purchase a front-wheel drive automobile. Dkt. # 29-4 at ¶ 2. Plaintiff contacted Defendant's salesman, Mike Holland ("Holland"), about the availability of a front-wheel drive vehicle. *Id.* On January 25, 2007, Defendant informed Plaintiff that it had a 2007 Ford Taurus for sale. *Id.* at ¶ 3, 5. Prior to her arrival at the dealership, Defendant prepared the purchase agreement. *Id.* at ¶ 4. Plaintiff had an opportunity to inspect the vehicle, but did not notice damage to the automobile's interior. *Id.* at ¶ 9. Both Plaintiff and an agent for Defendant signed the disclosure statement that listed the vehicle's mileage as 17,864 miles. Dkt. # 29-3 at 2. Soon after completing the purchase, Plaintiff alleges that she discovered that the odometer displayed over 19,000 miles. Dkt. # 29-4 at ¶ 5.

Prior to executing the agreement, Plaintiff believes that Defendant did not provide a copy of the agreement or an itemized breakdown of the financing. Dkt. # 29-4 at ¶ 14. Plaintiff explains that she felt confused prior to and during the execution of the agreement. *Id.* at ¶ 11-12. After

studying the agreement at her home, Plaintiff believed that Defendant included an additional $8,000 into the purchase price. *Id.* at ¶ 13. Defendant also included an extended service warranty for the vehicle, though Plaintiff alleges she decided not to purchase it. *Id.* at ¶ 8. When Plaintiff expressed concern with the agreement, Defendant refused to rescind it. *Id.* at ¶ 15.

The purchase agreement contained financing information, formatted as follows:

| Amount Financed | FINANCE CHARGE | ANNUAL PERCENTAGE RATE | Total Payments | Total Sale Price |
|---|---|---|---|---|
| $ 30618.20 <br> This is the amount of credit you will be provided. | $ 13827.88 <br> This is the dollar amount the credit will cost you. | 9.90 % <br> This is what the credit will cast as a yearly rate. | $ 44446.08 <br> This is the total amount you will pay if you make all payments as scheduled. | $ 44946.08 <br> This is the total cost of your credit purchase, including your down payment of $ 500.00 |

Dkt. # 29-3 at 1. The purchase agreement also noted Plaintiff traded-in the Grand Marquis, but did not identify a trade-in value. *Id.* Additionally, the cash price of the Taurus was listed as $29,595.20. *Id.* Plaintiff signed underneath a provision in the purchase agreement acknowledging that she "received a copy of this agreement with all blanks filled and that [she] ha[d] read it and [understood] it." *Id.*

Defendant's general manager, Robert Bradley Moore, contends in an affidavit that Defendant assigned a trade-in value to the Grand Marquis of $7,800.00. Dkt. # 38-4 at ¶ 4. Apparently, the Grand Marquis was collateral for an unpaid loan made by Wells Fargo Bank with a remaining balance of $21,000.00. *Id.* at ¶ 5. Defendant paid Wells Fargo Bank the $21,000.00, terminating the security interest in the Grand Marquis. Defendant then included $13,200.00 of "negative equity" (the amount of the unpaid Wells Fargo loan together with the assigned trade-in value for the Grand Marquis) into the principal for a new loan secured by the Taurus. *Id.*

Along with the purchase agreement, the parties completed an application for title and registration for the Michigan Department of State. Dkt. # 38-7. The application lists the trade-in value of the Grand Marquis as $21,000.00 less the unpaid loan balance of $21,000.00. *Id.* Plaintiff's expert witness estimates that the Taurus's true market value at the time of the trade-in transaction was $12,423.30. Dkt. # 29-6. Plaintiff has not advanced any opinion about the true market value of the Grand Marquis at the time of the transaction. Nor does Plaintiff explain what she believed the $30,618.20 "amount financed" to have been composed of.

The application for title contained the following disclaimer:

> ALL warranties on this product are those made by the manufacturers. The seller, [Defendant] hereby expressly disclaims all Warranties, either express or implied, including any implied Warranty of merchantability or fitness for a particular purpose, and [Defendant] neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle.

Dkt. # 38-7. The "Buyer's Guide" window sticker, however, did not indicate whether the vehicle came with a warranty. Both the box next to "AS-IS - NO WARRANTY" and the box next to "WARRANTY" were unchecked. Dkt. # 38-10. The bottom of the form has some writing under the headings "ITEMS COVERED" and "DURATION," but it is nearly illegible. Dkt. # 38-10. Defendant's counsel suggested that the writing stated "balance of factory," meaning that the only warranty Defendant made was the balance of the manufacturer's warranty. The purchase agreement indicates that Defendant charged $1,500.00 for an extended service warranty. Dkt. # 29-3 at 1.

On March 28, 2008, Plaintiff filed the instant motion for summary judgment. Defendant filed a response brief, which also incorporated its own motion for summary judgment. Dkt. # 36. The Court struck the response because the practice guidelines prohibit a party from including a motion in a response brief, a practice that creates particular problems with an electronic docket. *See*

dkt. # 37. On April 23, 2008, Defendant filed a second response brief. Though it did not include a motion for summary judgment, the brief repeatedly asserts Defendant is entitled to summary judgment. Additionally, Defendant filed a motion to adjourn the scheduling order. On May 28, 2008, the Court entertained argument with respect to the two motions.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion

must do more than simply show that there is some metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotations omitted)).

III

Plaintiff's motion suggests that no factual dispute exists with respect to each of the alleged statutory violations. Plaintiff advances the argument that Defendant did not properly or accurately disclose certain information related to the loan transaction. Defendant contends that the transaction is exempt from TILA because the amount financed exceeded the $25,000.00 jurisdictional limit. Furthermore, Defendant asserts that at least a question of fact exists with respect to each of the other alleged statutory violations. Each shall be addressed in turn.

A

First, Plaintiff asserts that Defendant violated TILA by not providing required disclosures relative to the terms of the loan before executing the purchase agreement. Defendant believes that TILA is inapplicable in this instance because the amount financed exceeds the exemption. "Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000" are exempt from TILA. 15 U.S.C. § 1603(3).

The purchase agreement lists the amount financed as $30,618.20, which exceeds the TILA exemption. The financed amount of $30,618.20, however, includes the unpaid loan secured by Plaintiff's trade-in vehicle less the value of the trade-in vehicle together with the purchase price of the Taurus. Defendant submits that the "negative equity" from the Grand Marquis transaction was

properly included in the calculation of the amount financed, just as the court concluded in *Slover-Becker v. Pitre Chrysler Plymouth Jeep of Scottsdale, Inc.*, 409 F.Supp.2d 1158, 1163 (D.Ariz. 2005). In *Slover-Becker*, the court determined that the unpaid loan amount secured by a trade-in vehicle was not a finance charge and was a portion of the loan amount being financed. The court reasoned as follows:

> Both Regulation Z [12 C.F.R. § 226] and TILA contain examples of what constitutes a finance charge, none of which fit the negative equity situation presented in this case. A finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit, but does not include any charge of a type payable in a comparable cash transaction.
>
> The negative equity in this case does not fall within the definition of a finance charge. There was no difference in the amount [the plaintiff], or anyone else in a comparable transaction, would be required to pay [the defendant] for the Mercedes-$30,597.41-whether the transaction was for cash or financed. The increase in the sales price was not a product of the fact that [the plaintiff] was buying the Mercedes on credit, i.e., she was being charged more for buying on credit, it was the result of the negative equity in the Jeep Cherokee. It cannot, therefore, be said that the "charge" was "incident to or a condition of an extension of credit."
>
> While the court may agree it would have been better and, perhaps, more enlightening to [the plaintiff] in the context of the overall transaction had [the defendant] specifically disclosed the amount of the negative equity, nothing in TILA or Regulation Z mandates such a disclosure with respect to the financing aspect. The cash price was clearly inflated; however, as noted above, the Staff Interpretation permits a creditor to include charges that are equally imposed in cash and credit transactions to be included in the cash price.

*Id.* Defendant relies on the *Slover-Becker* court's conclusion that the negative trade-in value is correctly included in the amount financed. Plaintiff contends that only the trade-in value of the Grand Marquis and the sale price of the Taurus are relevant to the amount financed, though she has not provided any controlling legal authority in support of this proposition. Ultimately, the reasoning in *Slover-Becker* is persuasive. *But see Leal v. Sonic-Massey Pontiac Buick GMC, Inc.*, 444

F.Supp.2d 1163, 1164-65 (D.Colo. 2006) (concluding that an allegation that the defendant included the negative equity in the amount financed was enough to overcome the defendant's Rule 12(b)(6) argument that the claim should be dismissed because the plaintiff paid more than the TILA jurisdictional limit for the vehicle). It is uncontested that Defendant loaned Plaintiff $30,618.20–part of which was to repay a loan secured by the trade-in vehicle and part to finance the purchase price on her new vehicle. The consolidated loan amount is clearly in excess of the jurisdictional limit. Thus, Plaintiff is not entitled to summary judgment with respect to her TILA claim.

B

Second, Plaintiff asserts that Defendant violated the MVSFA[1] by not separately disclosing, inter alia, the cash price of the Taurus or the trade-in value of the Grand Marquis. The MVSFA provides that an installment sale contract shall include all of the following items: (a) the cash price of the motor vehicle, (b) the down payment, (c) the unpaid cash balance, and (d) cost of any insurance premiums. It also requires that the contract contain "other necessary or incidental costs that the seller contracts to pay on behalf of the buyer and for the amount of which the seller agrees to extend credit to the buyer . . . [and] an itemization of the nature and amount of the costs." Mich. Comp. Laws § 492.113(2)(e).

Defendant asserts that Mich. Comp. Laws § 492.113a(1) permits a seller to refinance the unpaid balance of a loan secured by a trade-in vehicle when entering into a new installment contract. Though the MVSFA permits the seller to do so, it still mandates certain disclosures. Review of the purchase agreement reveals that the trade-in value of the vehicle was not identified, and that the

---

[1] Plaintiff also contends that the Defendant violated the Motor Vehicle Installment Sales Contract Act ("MVISC"), Mich. Comp. Laws § 566.301. The brief in support of the motion for summary judgment, however, does not explain how Defendant's conduct violated the MVISC. Thus, Plaintiff has not demonstrated she is entitled to summary judgment with respect to the MVISC claim.

purchase price of the Taurus is identified as $29,595.20. Defendant's counsel conceded that the cash price of the Taurus was not $29,595.20. Rather, the cash price, as calculated by Defendant's counsel during the hearing, was $16,395.20. Moreover, the "negative value" of Grand Marquis ($13,200) can only be calculated by reference to the value assigned to the Grand Marquis in the affidavit of Defendant's manager. Neither of these figures are provided in the purchase agreement. Additionally, Defendant's counsel conceded that Defendant erroneously charged Plaintiff sales tax equivalent to six percent of $29,595.20, and not six percent of the sales price for the Taurus that Plaintiff was purchasing.

Thus, Defendant violated the statute by not disclosing the sale price of the Taurus, the trade-in value of the Grand Marquis, or the amount of the sales tax. Mich. Comp. Laws § 492.113(2)(a) and (e). Summary judgment is appropriate for violation of the MVSFA. Defendant also suggested that Plaintiff is not entitled to a remedy under the MVSFA. At this juncture, no determination has been made regarding the appropriate remedy.

C

Third, Plaintiff asserts that Defendant violated the CRA by charging an APR greater than twenty-five percent. Plaintiff believes that including the "negative value" of the Grand Marquis in the purchase price constitutes hidden finance charges. The CRA provides "a regulated lender may charge, collect, and receive any rate of interest or finance charge for an extension of credit not to exceed 25% per annum." Mich. Comp. Laws § 445.1854(1). Plaintiff's expert witness estimated the APR to be 43%. Plaintiff, however, has not provided any authority for the proposition that Defendant could not include the refinanced balance of the Grand Marquis loan into the purchase of the Taurus. The resulting sum constitutes the principal of the new loan and not a hidden finance

charge. In fact, the MVSFA permits a seller to incorporate the unpaid loan on a trade-in vehicle into an installment contract. Mich. Comp. Laws § 492.113a(1). Plaintiff has not demonstrated that the actual finance charge exceeds 25%. Thus, summary judgment is improper.

D

Fourth, Plaintiff contends that Defendant's failure to complete the "Buyer's Guide" violated the MMWA. The MMWA requires a warrantor to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of [a] warranty." 15 U.S.C. § 2302(a). The MMWA permits warranties to be disclaimed, modified, or limited, but provides specific guidelines with respect to warranties associated with used motor vehicles. 15 U.S.C. § 2308(c); 15 U.S.C. § 2309(b). The code of federal regulations prohibits a used car dealer from misrepresenting the terms of a warranty or whether the vehicle comes with a warranty. 16 C.F.R. § 455.1(a)(2-3). Moreover, a used car dealer must disclose that a used vehicle is sold without a warranty. 16 C.F.R. § 455.1(b)(1). Before offering a used vehicle for sale, a dealer "must prepare, fill in as applicable and display . . . a 'Buyer's Guide.'" 16 C.F.R. § 455.2(1). If the dealer "offer[s] the vehicle without any implied warranty, i.e. 'as is,' [the dealer must] mark the box as provided." 16 C.F.R. § 455.2(2)(b). If the dealer sells a vehicle with a warranty after originally offering the vehicle "as is," the dealer must "cross out . . . the disclosure, and fill in the warranty terms . . ." 16 C.F.R. 455.2(2)(b)(ii).

Plaintiff represents that Defendant did not accurately disclose the terms of the warranty. The boxes indicating whether the Taurus was under warranty were not checked on "Buyer's Guide." Defendant asserts that the "Buyer's Guide" reflected that the car only maintained the balance of the factory warranty. Moreover, Defendant contends Plaintiff was aware of the applicable warranty, as demonstrated by her signature on the "Buyer's Guide." It is also undisputed that the application

for title disclaimed all warranties, except for the manufacturer's warranties. The disclaimer and the writing on the "Buyer's Guide" establish that a question of fact exists whether Defendant violated the MMWA. Summary judgment, again, is not appropriate.

E

Fifth, Plaintiff suggests that Defendant deceived her by misrepresenting the Taurus' actual mileage. Michigan's Motor Vehicle Code ("MVC") requires an owner to disclose to the buyer, in writing, the "odometer reading at the time of the transfer." Mich. Comp. Laws § 257.233a(1)(a).[2] Plaintiff contends that the actual mileage of the vehicle was more than 1,000 miles greater than disclosed. Though Plaintiff offers an affidavit stating that the actual mileage was 19,000 at the time of transfer, summary judgment is improper. Both parties signed the odometer disclosure statement indicating the mileage to be 17,864. Plaintiff's counsel acknowledged that Plaintiff signed the statement. The statement itself establishes a factual dispute regarding the actual mileage of the Taurus. Thus, summary judgment with respect to the MVC claim is inappropriate.

F

Sixth, Plaintiff asserts that Defendant, as a credit repair organization under the meaning of the CROA, violated the requirements of the act. Plaintiff bases this argument on Defendant's alleged representation that it would help repair her credit and relieve the financial burden of the financing within six to twelve months. Defendant contends that it is not a credit repair organization under the meaning of the statute. The CROA defines a "credit repair organization" as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or

---

[2] A violation of this section entitles the purchaser to "an amount equal to 3 times the amount of actual damages sustained or $1,500.00 whichever is greater, and in the case of a successful recovery of damages, the costs of the action together with reasonable attorney's fees." Mich. Comp. Laws § 257.233(a)(15).

-11-

> perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating . . .

15 U.S.C. § 1679a(2)(A)(i). Plaintiff has not established that Defendant meets this definition. There is no factual support that Defendant provided a service in exchange for the purpose of improving Plaintiff's credit. Rather, the facts demonstrate that the purpose of the transaction was to sell Plaintiff the Taurus. While completing the transaction, Plaintiff alleges that Defendant stated that it would assist her in purchasing a different car within twelve months. Her affidavit, however, does not indicate that she purchased, or that Defendant sold, the Taurus for the purpose of improving her credit. Thus, Defendant is not appropriately characterized as a credit repair organization under the meaning of the CROA. Summary judgment will be denied.

G

Plaintiff's final argument with respect to her motion for summary judgment is that the statutory violations demonstrate, as a matter of fact, Defendant breached the contract, committed fraud, was negligent, and breached its duty of good faith. Plaintiff's argument is unpersuasive. First, Plaintiff is only entitled to summary judgment with respect to the MVSFA claim. More importantly, Plaintiff has not provided the Court with the applicable law or the relevant facts that would entitle her to summary judgment of these common law causes of action. Thus, summary judgment with respect to these claims is not warranted.

Additionally, Defendant's response brief asserted that it is entitled to summary judgment with respect to some of Plaintiff's alleged statutory violations. As stated in the Court's April 21, 2008 order, a party may not include a motion in a response brief to another party's motion. To obtain the requested relief, Defendant must file its own motion seeking relief.

Lastly, Defendant seeks to adjourn the scheduling order dates because Plaintiff filed an amended complaint adding multiple causes of action. The Court will grant the motion and extend the scheduling order dates approximately six weeks from the date of this order.

H

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 29] is **GRANTED** in part and **DENIED** in part. Plaintiff is entitled to summary judgment with respect to her claim under Michigan's Motor Vehicle Sales Finance Act, Mich. Comp. Laws § 492.113(2).

It is further **ORDERED** that Defendant's motion to adjourn scheduling order dates [Dkt. # 30] is **GRANTED**. The scheduling order is amended as follows:

| **YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES** | |
| --- | --- |
| Pretrial Disclosures: | October 31, 2008 |
| Discovery Cutoff: | July 18, 2008 |
| Dispositive Motions Filed By: | August 29, 2008 |
| Motions *in limine* Filed By: | December 10, 2008 |
| Final Pretrial Order & Jury Instructions Due: | December 31, 2008 |
| Final Pretrial Conference: | January 8, 2009 at 3:30 p.m. |
| Trial Date: | January 20, 2009 at 8:30 a.m. |

The balance of the case management order shall remain in full force and effect.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 5, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 5, 2008.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS