UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GAIL ANN SCHULTZ,

        Plaintiff,

v.

Case Number 07-13932-BC
Honorable Thomas L. Ludington

BURTON-MOORE FORD, INC., d/b/a Moore
Motor Sales, Inc. and AMERICREDIT
FINANCIAL SERVICES, INC.,
        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR RECONSIDERATION AS MOOT

Defendants Ameritech Financial Services Incorporated and Burton-Moore Ford, Incorporated's ("Burton-Moore," collectively "Defendants") motion for summary judgment and their motion for reconsideration of the Court's granting in part of Plaintiff's motion for summary judgment are before the Court. Plaintiff Gail Ann Schultz ("Plaintiff") advances twelve claims in an amended complaint arising from the sale of a used automobile. Dkt. # 21. Plaintiff's amended complaint alleges the following statutory violations:

(1)     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a);
(2)     The Credit Reform Act ("CRA"), Mich. Comp. Laws § 445.1851;
(3)     The Motor Vehicle Installment Sales Contract Act ("MVISCA")[1], Mich. Comp. Laws § 566.301;
(4)     The Motor Vehicle Sales Finance Act ("MVSFA"), Mich. Comp. Laws § 492.113;
(5)     Consumer Protection Act ("CPA"), Mich. Comp. Laws § 445.901
(6)     The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2308(c);
(7)     The Michigan Motor Vehicle Code, Mich. Comp. Laws § 257.233a; and
(8)     The Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679.

---

[1] The instant motions do not address Plaintiff's claim under the MVISCA.

Plaintiff's amended complaint also asserts claims for fraud, breach of contract, breach of good faith, and negligence.

Previously, the Court granted in part and denied in part Plaintiff's motion for summary judgment. Dkt. # 41. Defendants now contend that the Court erred in granting partial summary judgment with respect to Plaintiff's claim under the MVSFA, Mich. Comp. Laws § 492.113, and suggests that they are entitled to summary judgment with respect to seven of Plaintiff's statutory claims and all of her common law claims. The parties offer few fresh facts. Consequently, the Court's earlier analysis remains largely unchanged.

For the reasons stated below, the Court will **GRANT** in part Defendant's motion for summary judgment and **DENY** Defendants' motion for reconsideration.

I

According to Plaintiff's affidavit, she wished to trade-in a rear-wheel drive 2004 Mercury Grand Marquis for a front-wheel drive automobile. Dkt. # 29-4 at ¶ 2. Plaintiff contacted Burton-Moore's salesman, Mike Holland ("Holland"), about purchasing a front-wheel drive vehicle. *Id.* On January 25, 2007, Burton-Moore informed Plaintiff that a 2007 Ford Taurus was available for purchase. *Id.* at ¶ 3, 5. Prior to her arrival at the dealership, Burton-Moore prepared the purchase agreement. *Id.* at ¶ 4. Plaintiff had an opportunity to inspect the vehicle, but did not notice damage to the automobile's interior. *Id.* at ¶ 9. Moreover, Plaintiff discovered that the odometer displayed over 19,000 miles, despite the fact the odometer disclosure statement listed the Taurus's mileage at 17,864 miles. *Id.* at ¶ 5. Both Plaintiff and an agent for Burton-Moore signed the disclosure statement that listed the vehicle's mileage as 17,864 miles. Dkt. # 29-3 at 2.

Prior to signing the purchase agreement, Burton-Moore did not provide a copy of the

agreement or an itemization of the expenses that would be financed by loan proceeds. Dkt. # 29-4 at ¶ 14. Plaintiff also felt confused prior to and during the execution of the agreement. *Id.* at ¶ 11-12. After studying the agreement at her home, Plaintiff believed that Burton-Moore included an additional $8,000 into the purchase price. *Id.* at ¶ 13. Burton-Moore included the extended service warranty, though Plaintiff decided not to purchase it. *Id.* at ¶ 8. When Plaintiff expressed concern with the agreement, Burton-Moore refused to rescind it. *Id.* at ¶ 15.

The purchase agreement contained the following finance information:

| Amount Financed | FINANCE CHARGE | ANNUAL PERCENTAGE RATE | Total Payments | Total Sale Price |
|---|---|---|---|---|
| $ 30618.20  This is the amount of credit you will be provided. | $ 13827.88  This is the dollar amount the credit will cost you. | 9.90 %  This is what the credit will cast as a yearly rate. | $ 44446.08  This is the total amount you will pay if you make all payments as scheduled. | $ 44946.08  This is the total cost of your credit purchase, including your down payment of $ 500.00 |

Dkt. # 29-3 at 1. The purchase agreement also noted Plaintiff traded-in the Grand Marquis, but listed the trade-in value as $0.00. *Id.* Additionally, the cash price of the Taurus was listed as $29,595.20. *Id.* The purchase agreement also contained a "Notice of Assignment," which stated: "[Burton-Moore] has assigned this agreement to the lender. You must make all future payments to the lender. The dealer is making the disclosures on this agreement." *Id.* Moreover, it stated that Plaintiff "may prepay [the] credit in full or in part without penalty." *Id.* Plaintiff signed underneath a provision in the purchase agreement acknowledging that she "received a copy of this agreement with all blanks filled and that [she] ha[d] read it and [understood] it." *Id.*

Burton-Moore's general manager, Robert Bradley Moore, contends in an affidavit that the assigned trade-in value of the Grand Marquis was $7,800.00. Dkt. # 38-4 at ¶ 4. The outstanding balance on the loan secured by the Grand Marquis was, however, $21,000. *Id.* at ¶ 5. Burton-Moore

paid the balance of the loan to extinguish the lien, and included $13,200.00 of what Defendants refer to as "negative equity" in the purchase price of the Taurus. *Id.*

Along with the purchase agreement, the parties completed an application for title and registration to the Michigan Department of State. Dkt. # 38-7. The application lists the trade-in value as $21,000.00 less a lien of $21,000.00. *Id.* Plaintiff's expert witness estimates that the Taurus's true market value was $12,423.30. Dkt. # 29-6.

The application for title contained the following disclaimer:

> ALL warranties on this product are those made by the manufacturers. The seller, [Burton-Moore] hereby expressly disclaims all Warranties, either express or implied, including any implied Warranty of merchantability or fitness for a particular purpose, and [Burton-Moore] neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle.

Dkt. # 38-7. The "Buyer's Guide" window sticker, however, did not indicate whether the vehicle came with a warranty. Both the box next to "AS-IS - NO WARRANTY" and the box next to "WARRANTY" were unchecked. Dkt. # 38-10. The bottom of the form has some writing under the headings "ITEMS COVERED" and "DURATION," but it is illegible. Dkt. # 38-10. The purchase agreement indicates that Burton-Moore charged $1,500.00 for the extended service warranty. Dkt. # 29-3 at 1.

On March 28, 2008, Plaintiff filed the instant motion for summary judgment. In a written opinion, the Court granted Plaintiff's motion with respect to her claim for violation of the MVSFA. The Court denied Plaintiff's motion for summary judgment with respect to all other claims. Thereafter, Defendants filed a motion for reconsideration, contending that it had not violated MVSFA. Defendants rely on a provision of the Motor Vehicle Installment Sales Act ("MVISA") for the proposition that compliance with TILA satisfies the MVSFA, notwithstanding the MVSFA's

disclosure requirements. *See* Mich. Comp. Laws 566.302. In addition, Defendants filed a motion for summary judgment on all counts. Dkt. # 60 (citing Fed. R. Civ. P 56). Defendant's motions are presently before the Court.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts."

*Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (citations and quotations omitted).

III

Defendants' motions are postured in an unusual manner because attention has been given to the merits of the claims when addressing Plaintiff's motion for summary judgment. The parties have not materially supplemented the record and, for the most part, advance many of the legal arguments already addressed by the Court.

A

In the earlier opinion, the Court determined that the amount financed by Defendants exceeds the jurisdictional limit of TILA. Consequently, Defendants contend it is entitled to summary judgment. Plaintiff contends that the amount of the loan is a factual question for the jury. The Court previously reasoned as follows:

> First, Plaintiff asserts that Defendant violated TILA by not providing required disclosures relative to the terms of the loan before executing the purchase agreement. Defendant believes that TILA is inapplicable in this instance because the amount financed exceeds the exemption. "Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000" are exempt from TILA. 15 U.S.C. § 1603(3).
>
> The purchase agreement lists the amount financed as $30,618.20, which exceeds the TILA exemption. The financed amount of $30,618.20, however, includes the unpaid loan secured by Plaintiff's trade-in vehicle less the value of the trade-in vehicle together with the purchase price of the Taurus. Defendant submits that the "negative equity" from the Grand Marquis transaction was properly included in the calculation of the amount financed, just as the court concluded in *Slover-Becker v. Pitre Chrysler Plymouth Jeep of Scottsdale, Inc.*, 409 F.Supp.2d 1158, 1163 (D.Ariz. 2005). In *Slover-Becker*, the court determined that the unpaid loan amount secured by a trade-in vehicle was not a finance charge and was a portion of the loan amount being financed. The court reasoned as follows:
>
>> Both Regulation Z [12 C.F.R. § 226] and TILA contain

> examples of what constitutes a finance charge, none of which fit the negative equity situation presented in this case. A finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit, but does not include any charge of a type payable in a comparable cash transaction.
>
> The negative equity in this case does not fall within the definition of a finance charge. There was no difference in the amount [the plaintiff], or anyone else in a comparable transaction, would be required to pay [the defendant] for the Mercedes-$30,597.41-whether the transaction was for cash or financed. The increase in the sales price was not a product of the fact that [the plaintiff] was buying the Mercedes on credit, i.e., she was being charged more for buying on credit, it was the result of the negative equity in the Jeep Cherokee. It cannot, therefore, be said that the "charge" was "incident to or a condition of an extension of credit."
>
> While the court may agree it would have been better and, perhaps, more enlightening to [the plaintiff] in the context of the overall transaction had [the defendant] specifically disclosed the amount of the negative equity, nothing in TILA or Regulation Z mandates such a disclosure with respect to the financing aspect. The cash price was clearly inflated; however, as noted above, the Staff Interpretation permits a creditor to include charges that are equally imposed in cash and credit transactions to be included in the cash price.

*Id.* Defendant relies on the *Slover-Becker* court's conclusion that the negative trade-in value is correctly included in the amount financed. Plaintiff contends that only the trade-in value of the Grand Marquis and the sale price of the Taurus are relevant to the amount financed, though she has not provided any controlling legal authority in support of this proposition. Ultimately, the reasoning in *Slover-Becker* is persuasive. *But see Leal v. Sonic-Massey Pontiac Buick GMC, Inc.*, 444 F.Supp.2d 1163, 1164-65 (D.Colo. 2006) (concluding that an allegation that the defendant included the negative equity in the amount financed was enough to overcome the defendant's Rule 12(b)(6) argument that the claim should be dismissed because the plaintiff paid more than the TILA jurisdictional limit for the vehicle). It is uncontested that Defendant loaned Plaintiff $30,618.20– part of which was to repay a loan secured by the trade-in vehicle and part to finance the purchase price on her new vehicle. The consolidated loan amount is clearly in excess of the jurisdictional limit. Thus, Plaintiff is not entitled to summary judgment with respect to her TILA claim.

Dkt. # 41 at 6-8.

Plaintiff dissects the $30,618.20 amount financed and asserts that the record establishes a factual dispute that the cash price of the vehicle was, at most, $21,244.60. Dkt. # 64 at 5. Plaintiff advances *Leal*, 444 F. Supp. 2d at 1164-65, for this proposition. Plaintiff's reliance on *Leal* is misplaced because that court accepted as true the allegation of the cash price being within TILA's jurisdictional limit when it applied the standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

While Plaintiff disputes the conclusion that TILA's jurisdictional limit only applies to the "true value" of the vehicle, this is a question of law and not a factual dispute. *Id.* Notwithstanding Plaintiff's argument that previous debt should be exempted when calculating the jurisdictional limit, the Court continues to agree with the reasoning in *Slover-Becke*r. Here, the purchase agreement establishes that the consolidated amount financed exceeds the jurisdictional limit. Plaintiff has not advanced a legitimate factual question.

B

Next, the Court previously granted summary judgment in favor of Plaintiff with respect to the violation of the MVSFA. Defendants raise the following arguments in its motion for reconsideration and motion for summary judgment: (1) that Defendants complied with the MVSFA by including the sales tax for the Taurus in the amount financed; (2) that Plaintiff is not entitled to a remedy under the MVSFA because Defendants did not include a "prohibited cost" in the contract; and (3) that MVSFA's quasi-preemption provision provides that compliance with TILA equates to compliance with MVSFA's requirements. By way of review, the Court reasoned as follows in the previous opinion:

> Second, Plaintiff asserts that Defendant violated the MVSFA by not separately disclosing, inter alia, the cash price of the Taurus or the trade-in value of the Grand Marquis. The MVSFA provides that an installment sale contract shall include all of the following items: (a) the cash price of the motor vehicle, (b) the down payment, (c) the unpaid cash balance, and (d) cost of any insurance premiums. It also requires that the contract contain "other necessary or incidental costs that the seller contracts to pay on behalf of the buyer and for the amount of which the seller agrees to extend credit to the buyer . . . [and] an itemization of the nature and amount of the costs." Mich. Comp. Laws § 492.113(2)(e).
>
> Defendant asserts that Mich. Comp. Laws § 492.113a(1) permits a seller to refinance the unpaid balance of a loan secured by a trade-in vehicle when entering into a new installment contract. Though the MVSFA permits the seller to do so, it still mandates certain disclosures. Review of the purchase agreement reveals that the trade-in value of the vehicle was not identified, and that the purchase price of the Taurus is identified as $29,595.20. Defendant's counsel conceded that the cash price of the Taurus was not $29,595.20. Rather, the cash price, as calculated by Defendant's counsel during the hearing, was $16,395.20. Moreover, the "negative value" of the Grand Marquis ($13,200) can only be calculated by reference to the value assigned to the Grand Marquis in the affidavit of Defendant's manager. Neither of these figures are provided in the purchase agreement. Additionally, Defendant's counsel conceded that Defendant erroneously charged Plaintiff sales tax equivalent to six percent of $29,595.20, and not six percent of the sales price for the Taurus that Plaintiff was purchasing.
>
> Thus, Defendant violated the statute by not disclosing the sale price of the Taurus, the trade-in value of the Grand Marquis, or the amount of the sales tax. Mich. Comp. Laws § 492.113(2)(a) and (e). Summary judgment is appropriate for violation of the MVSFA. Defendant also suggested that Plaintiff is not entitled to a remedy under the MVSFA. At this juncture, no determination has been made regarding the appropriate remedy.

Dkt. # 41 at 8-9 (footnote omitted). As discussed above, the MVSFA requires the itemization of charges. Defendants' offer no additional legal authority to the contrary and, thus, Defendants' first argument should be rejected.

Next, Defendants contend that Plaintiff is not entitled to a remedy for the alleged violation because the MVSFA provides a remedy for a private party only when contract of sale contains "prohibited charges." Mich. Comp. Laws § 492.131(d). Plaintiff's response brief did not address

this argument. The MVSFA provides that:

> Whenever in an installment sale contract under this act the seller or any subsequent holder has charged, contracted for, collected, or received from the buyer *prohibited costs or charges* in connection with the contract, all the costs and charges in connection with the contract, other than for insurance, shall be void and unenforceable and any amounts paid by the buyer for such costs and charges, other than insurance, shall be applied on the principal of the contract.

*Id.* (emphasis added). Consequently, Defendants assert that failing to itemize costs does not constitute a "prohibited charge." Clearly, the MVSFA does not prohibit including sales tax, a sales price, or assigning a trade-in value when selling a vehicle.

A court in the Western District of Michigan, concluded that the MVSFA does not provide for a private right of action for *any* violation of the MVSFA, only the inclusion of prohibited charges. *Calkins v. Midland Funding NCC-2 Corp.*, 412 F. Supp. 2d 699, 705 (W.D. Mich. 2006). The court reasoned that a private remedy is created by a statutory violation only if expressly provided for by the statute or "can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions." *Id.* (citing *Bell v. League Life Ins. Co.*, 387 N.W.2d 154 (Mich. Ct. App. 1986)). There, the *Calkins* court concluded that the MVSFA did not indicate that fees charged by an unlicensed seller are "prohibited charges" and the statute did not authorize a civil remedy for that violation. *Id.* at 706.

In *Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp. 2d 719, 726 (W.D. Mich. 2001), the court similarly concluded that the legislature intended the MVSFA to be enforced by criminal sanctions, with civil penalties available only where explicitly authorized by statute. Moreover, section 492.131(d) authorizes civil damages for "prohibited charges," which are enumerated in subsection (a) of the same statute. *Id.* Subsection (a) provides as follows:

> A licensee under this act shall not charge, contract for, collect, or receive from the

-10-

> buyer, directly or indirectly, any further or other amount for costs, charges, examination, appraisal, service, brokerage, commission, expense, interest, discount, fees, fines, penalties, or other thing of value in connection with the retail sale of a motor vehicle under an installment sale contract in excess of the cost of insurance premiums, other costs, the finance charges, refinance charges, default charges, recording and satisfaction fees, court costs, attorney's fees, and expenses of retaking, repairing, and storing a repossessed motor vehicle which are authorized by this act.

Mich. Comp. Laws § 492.131(a). Ultimately, the plain language of the statute and the reasoning in *Calkins* and *Lozada* are persuasive. The MVSFA does not prohibit the inclusion of sales tax, trade-in value, or sales price in a contract for the purchase of an automobile. While the statute requires their itemized disclosure, section 492.131 appears to only authorize a civil remedy for charges prohibited by that section. *See Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1041 (W.D. Mich. 2002) (held that a seller did not contract for a "prohibited charge" when the reason for non-disclosure was that it did not supply a copy of the contract).

Finally, Defendants' motion for reconsideration and motion for summary judgment assert that the MVSFA contains a quasi-preemption provision, which provides that "[c]ompliance with the requirements of [TILA] . . . is compliance with the disclosure provisions of [Mich. Comp. Laws § 492.113]." Mich. Comp. Laws § 492.122a. In light of the conclusion that Plaintiff is not entitled to civil damages for a violation of Mich. Comp. Laws 492.113, that argument raised in the motion for reconsideration is moot. Thus, the Court will deny Defendants' motion for reconsideration, conclude that the record clearly demonstrates that Defendant did not provide a thorough itemization of costs, and grant Defendants' motion for summary judgment on the basis that a civil remedy is not available for the violation of the MVSFA.

C

Defendants also contend that it is entitled to summary judgment with respect to Plaintiff's

claim for a violation of the CRA. The Court previously held the following:

> Third, Plaintiff asserts that Defendant violated the CRA by charging an APR greater than twenty-five percent. Plaintiff believes that including the "negative value" of the Grand Marquis in the purchase price constitutes hidden finance charges. The CRA provides "a regulated lender may charge, collect, and receive any rate of interest or finance charge for an extension of credit not to exceed 25% per annum." Mich. Comp. Laws § 445.1854(1). Plaintiff's expert witness estimated the APR to be 43%. Plaintiff, however, has not provided any authority for the proposition that Defendant could not include the refinanced balance of the Grand Marquis loan into the purchase of the Taurus. The resulting sum constitutes the principal of the new loan and not a hidden finance charge. In fact, the MVSFA permits a seller to incorporate the unpaid loan on a trade-in vehicle into an installment contract. Mich. Comp. Laws § 492.113a(1). Plaintiff has not demonstrated that the actual finance charge exceeds 25%. Thus, summary judgment is improper.

Dkt. # 41 at 9-10. Plaintiff contends that, based on the record, a jury could conclude that the true cash price was, "hypothetically" speaking, $14,500, resulting in a finance charge in excess of 25%. Dkt. # 64 at 7.

The Court is not persuaded by Plaintiff's argument. First, Plaintiff has not offered any evidence that the interest rate was in excess of 25% except for calculating a rate from the "hypothetical" sales price of $14,500. Second, Plaintiff has not provided any evidence disputing the fact that the unpaid balance of the previous loan for the Grand Marquis was $21,000. As discussed previously, Plaintiff has not provided legal authority for the notion that "negative value" may not be incorporated into the amount to be financed. Nor has Plaintiff reasonably disputed that an unpaid balance remained to be paid from the credit purchase of the Grand Marquis. Summary judgment is appropriate.

D

Next, Defendants contend that Plaintiff's MMWA claim must fail because: (1) Defendants are not warrantors as defined by the statute, (2) Defendants disclaimed all warranties, and (3)

Defendants provided a completed Buyer's Guide as required by the MMWA. In its earlier opinion, the Court reasoned as follows:

> Fourth, Plaintiff contends that Defendant's failure to complete the "Buyer's Guide" violated the MMWA. The MMWA requires a warrantor to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of [a] warranty." 15 U.S.C. § 2302(a). The MMWA permits warranties to be disclaimed, modified, or limited, but provides specific guidelines with respect to warranties associated with used motor vehicles. 15 U.S.C. § 2308(c); 15 U.S.C. § 2309(b). The code of federal regulations prohibits a used car dealer from misrepresenting the terms of a warranty or whether the vehicle comes with a warranty. 16 C.F.R. § 455.1(a)(2-3). Moreover, a used car dealer must disclose that a used vehicle is sold without a warranty. 16 C.F.R. § 455.1(b)(1). Before offering a used vehicle for sale, a dealer "must prepare, fill in as applicable and display . . . a 'Buyer's Guide.'" 16 C.F.R. § 455.2(1). If the dealer "offer[s] the vehicle without any implied warranty, i.e. 'as is,' [the dealer must] mark the box as provided." 16 C.F.R. § 455.2(2)(b). If the dealer sells a vehicle with a warranty after originally offering the vehicle "as is," the dealer must "cross out . . . the disclosure, and fill in the warranty terms . . ." 16 C.F.R. 455.2(2)(b)(ii).
>
> Plaintiff represents that Defendant did not accurately disclose the terms of the warranty. The boxes indicating whether the Taurus was under warranty were not checked on "Buyer's Guide." Defendant asserts that the "Buyer's Guide" reflected that the car only maintained the balance of the factory warranty. Moreover, Defendant contends Plaintiff was aware of the applicable warranty, as demonstrated by her signature on the "Buyer's Guide." It is also undisputed that the application for title disclaimed all warranties, except for the manufacturer's warranties. The disclaimer and the writing on the "Buyer's Guide" establish that a question of fact exists whether Defendant violated the MMWA. Summary judgment, again, is not appropriate.

Dkt. # 41 at 10-11. Defendants' arguments in support of summary judgment are unconvincing.

First, Defendants' argument that Burton-Moore is not a warrantor is ultimately irrelevant. The MMWA defines a warrantor as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5). It also provides a definition of a "supplier," which is "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4). Defendant

-13-

is properly characterized as a supplier and not a warrantor. The Court's earlier opinion erroneously cited section 2302, which discusses warrantors. That discrepancy notwithstanding, Defendant's argument is unpersuasive.

15 U.S.C. § 2309 vests authority in the Federal Trade Commission to create regulations for the conspicuous and clear display of warranties. As discussed in the earlier opinion, the code of federal regulations promulgates specific guidelines concerning the disclaiming of warranties in used car transactions. *See* 16 C.F.R. § 455.1 (discussed supra). The analysis remains unchanged.

Second, Defendants contend all warranties were disclaimed. While the record demonstrates that Burton-Moore included a provision disclaiming all warranties in the sales agreement, Defendants are not entitled to summary judgment. As discussed above, the violation arises from the fact that the "Buyer's Guide" window sticker was not completed. It is clear that Burton-Moore did not indicate the applicable warranty by checking one of the warranty boxes as required by 16 C.F.R. § 455.2(2)(b). The exhibit provided merely contains the handwritten phrase of "Balance of Factory" on the "Buyer's Guide" (although nearly illegible). Thus, a factual dispute remains whether Defendant violated the regulations concerning the "Buyer's Guide." Summary judgment should be denied.

E

Next, Defendants contend that they complied with the procedural requirements of Mich. Comp. Laws § 257.233a(1) of the MVC with respect to the odometer's mileage. Defendants assert that Plaintiff's "self-serving" affidavit "flies in the face of the documents signed by Plaintiff at the time of purchase . . . ." Dkt. # 60 at 24. Plaintiff produced an exhibit completed by Burton-Moore that indicate two different mileages – one with the mileage listed as 17,864 and another with 17,989

miles. *See* dkt. # 64-10, 64-11. The Court previously reasoned as follows:

> Fifth, Plaintiff suggests that Defendant deceived her by misrepresenting the Taurus' actual mileage. Michigan's Motor Vehicle Code ("MVC") requires an owner to disclose to the buyer, in writing, the "odometer reading at the time of the transfer." Mich. Comp. Laws § 257.233a(1)(a).[2] Plaintiff contends that the actual mileage of the vehicle was more than 1,000 miles greater than disclosed. Though Plaintiff offers an affidavit stating that the actual mileage was 19,000 at the time of transfer, summary judgment is improper. Both parties signed the odometer disclosure statement indicating the mileage to be 17,864. Plaintiff's counsel acknowledged that Plaintiff signed the statement. The statement itself establishes a factual dispute regarding the actual mileage of the Taurus. Thus, summary judgment with respect to the MVC claim is inappropriate.

Dkt. # 41 at 11. A factual dispute, however, remains based on Plaintiff's affidavit and the discrepancy between the forms indicating two different mileages. Summary judgment will be denied.

F

Defendants contend they are also entitled to summary judgment of Plaintiff's CROA claim on the basis that it is not a credit repair organization. Plaintiff does not respond to the argument. The court previously reasoned that Defendants are not credit repair organizations as defined by the CROA. Dkt. # 41 at 11. Plaintiff has not demonstrated a factual dispute otherwise and summary judgment will be granted in favor of Defendants.

G

Next, Plaintiff alleges that Burton-Moore's alleged misrepresentations violated the CPA. Mich. Comp. Laws § 445.901. Defendant contends that the CPA is inapplicable to the transaction because the MVC governs automobile sales, thus, preempting the CPA. *See* dkt. # 60 at 28-29 (citing Mich. Comp. Laws § 445.904(1)). Plaintiff has not disputed this assertion or presented a factual

---

[2] A violation of this section entitles the purchaser to "an amount equal to 3 times the amount of actual damages sustained or $1,500.00 whichever is greater, and in the case of a successful recovery of damages, the costs of the action together with reasonable attorney's fees." Mich. Comp. Laws § 257.233(a)(15).

dispute. Summary judgment should be granted with respect to Plaintiff's CPA claim.

H

Finally, Defendants contend that no factual dispute exists with respect to each of Plaintiff's common law causes of action. Plaintiff's amended complaint generally asserted claims for breach of contract, fraud, and negligence. Plaintiff's pleadings have done little to develop the factual bases supporting these claims or provide legal authority in support. *See, e.g.*, dkt. # 64 at 8. Consequently, the Court is placed in the position of attempting to construct these claims with minimal guidance from Plaintiff.

First, the record demonstrates that Defendants have not breached the contract. Plaintiff acknowledges that Burton-Moore delivered the Taurus, which it contracted to sell. While Plaintiff alleges that certain misrepresentations are the equivalent of breaches of contract, she has not met her burden by identifying any material manner that Burton-Moore did so. Plaintiff's allegations concern representations made during contract formation, not malfeasance or nonfeasance. Summary judgment will be granted in favor of Defendants.

Next, in support of her negligence claim, Plaintiff suggests that Defendants were negligent by erroneously identifying the odometer mileage, the amount financed, and the cash price in the purchase documents. "As a general rule, there must be some active negligence or misfeasance to support a tort. There must be some breach of duty distinct from breach of contract." *Rinaldo's Const. Corp. v. Mich. Bell. Tel. Co.*, 559 N.W.2d 647, 657 (Mich. 1997) (citation omitted). A plaintiff must demonstrate "physical harm to persons or tangible things" or some other "violation of a legal duty separate and distinct from the contractual obligation." *Id.* at 658. Plaintiff has not identified an independent legal duty breached by Defendants or alleged any physical harm arising from the

contractual relationship. Again, summary judgment is proper.

Defendants also assert that Plaintiff has not met her burden with respect to her fraud claim. Under Michigan law, "[t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *United States Fidelity and Guaranty Co. v. Black*, 313 N.W.2d 77, 82 (Mich. 1981). Defendants contend that Plaintiff's reliance on the alleged misrepresentations was unreasonable because Plaintiff had a responsibility to review the terms in the agreement. Dkt. # 60 at 26. The record demonstrates a factual dispute that Defendant induced Plaintiff to purchase the Taurus by making certain representations concerning the trade-in value of the Grand Marquis and the purchase price of the Taurus extraneous to the contract. *See* dkt. # 64-12 at ¶ 7 (*Plaintiff's Aff.*). While Defendants believe that Plaintiff's reliance on their representations was unreasonable, that is a question of fact for the jury. The Court will deny Defendants' request for summary judgment of the fraud claim.

Plaintiff also alleged a cause of action for breach of the obligation of good faith. Defendants contend that a cause of action for breach of the obligation of good faith and fair dealing is not recognized by Michigan law. Dkt. # 60 (citing Mich. Comp. Laws § 440.1203). Plaintiff does not dispute this assertion and summary judgment will be granted in favor of Defendants.

IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 60] is **GRANTED** in part with respect to alleged violations of TILA, the CRA, the CROA, the MVSFA,

and the CPA advanced in the amended complaint. Defendant is also entitled to summary judgment with respect to Plaintiff's claims of breach of contract, negligence, and breach of the obligation of good faith in the amended complaint. Plaintiff's claim for fraud and claims for violation of MMWA, MVISCA, and MVC remain.

It is further **ORDERED** that Defendant's motion for reconsideration [Dkt. # 42 ] is **DENIED** as moot.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 2, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 2, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS